1
2
3
4
5
6
7

8            UNITED STATES DISTRICT COURT

9           SOUTHERN DISTRICT OF CALIFORNIA

10

11 MICHAEL TRANT; DEBORAH TRANT,          Case No. 12-cv-164-JM-WMC

12              Plaintiffs,               **ORDER GRANTING IN PART AND**
        vs.                               **DENYING IN PART DEFENDANT**
                                          **WELLS FARGO'S MOTION TO**
13                                        **DISMISS**
   WELLS FARGO BANK, N.A.; WELLS
14 FARGO HOME MORTGAGE; NDEX WEST,        Docket No. 8
   LLC; and DOES 1-20, inclusive,
15
              Defendants.
16

17 **I. BACKGROUND**

18       Plaintiffs Michael and Deborah Trant filed this case in California Superior Court for the

19 County of San Diego in November 2011.  The case was removed to this court on January 20,

20 2012.  The complaint is based on a mortgage transaction between Plaintiffs and Wells Fargo and

21 the subsequent Notice of Default and threat of foreclosure sale.

22       According to the complaint, Plaintiffs obtained a mortgage loan and purchased a home in

23 Pine Valley, California in September of 2007.  ¶ 1. The original lender was Edward Jones

24 Mortgage, LLC.  At some point the loan was transferred to Wells Fargo, which is the current

25 lender and servicer of Plaintiffs' loan.  ¶¶ 2-3, 5.

Plaintiffs state that they are both retired and living off investment income. ¶ 18.  At some point, a family tragedy required them to take full guardianship of three grandchildren. ¶ 18. They also provide 24-hour care for two disabled brothers. ¶ 18.  Because of these responsibilities, Plaintiffs sought a loan modification under the Home Affordable Modification Program ("HAMP") on May 5, 2010. ¶ 20.  Plaintiffs detail significant difficulties during the application process.  According to the complaint, Wells Fargo repeatedly lost their paperwork, sent them inconsistent letters concerning the status of their application, and asked Plaintiffs to submit applications to the HAMP program on multiple occasions.  In October 2011, a representative from Wells Fargo stated that Plaintiffs' modification file was closed due to a failure to submit documentation, but the representative could not explain what document was missing. ¶ 32.  After speaking with various other Wells Fargo employees, on January 6, 2011, Plaintiffs were told by Susann Armour that they had been prequalified for a four month trial modification, which they would soon receive in the mail. ¶ 41.  The modification was to reduce Plaintiffs' payment from about $2,451 to $2,206 for the months of January to April, 2011. ¶ 41. Plaintiffs never received the trial modification letter, so they continued to make timely mortgage payments of the original amount. ¶ 43.

In April 2011, Wells Fargo sent Plaintiffs a "Payment arrangement agreement," reflecting a payment schedule for January to April, 2011 that matched the trial modification discussed by Plaintiffs with Ms. Armour in January 2011. ¶ 46.  The agreement is included in the complaint as Exhibit D.  The third page of the agreement (separately titled the "Forbearance Agreement") clearly states that the loan is in default.  Plaintiffs explain that the loan was not actually in default, but they signed the agreement because they believed the document was intended to represent the HAMP trial modification discussed on the phone with Susann Armour. ¶¶ 47-48. Plaintiffs state that they made the April payment in full. ¶ 48.  On May 8, 2011, Plaintiffs

1   received a letter stating that the loan was in default and that Plaintiffs owed $3,524 in delinquent

2   payments and fees, but did not provide the basis for this figure.  ¶ 50.

3   　　　　After receiving the May 2011 letter, Plaintiffs spent several additional months attempting

4   to secure the HAMP modification, repeatedly being told that the file was still being reviewed.

5   On August 1, 2011, Plaintiffs were denied a loan modification because they "did not have a

6   'long-term financial hardship.'"  ¶ 55.

7   　　　　In late October of 2011, Plaintiffs received a letter informing them that the loan had been

8   accelerated and the matter had been referred to Wells Fargo's attorney to begin foreclosure

9   proceedings.  ¶ 56.  Defendants ceased accepting mortgage payments, and Defendant NDEX

10  filed a Notice of Default and Election to Sell Under Deed of Trust dated November 1, 2011.  ¶

11  58.  Plaintiffs state that they were never delinquent on payments until Wells Fargo announced

12  foreclosure and stopped accepting payments.

13  　　　　Based on the foregoing, Plaintiffs state eleven causes of action:  (1) breach of contract;

14  (2) breach of the implied covenant of good faith and fair dealing; (3) promissory estoppel; (4)

15  fraud; (5) intentional or negligent misrepresentation; (6) negligence; (7) violation of the

16  Rosenthal Fair Debt Collection Practices Act; (8) negligence per se; (9) violation of Cal. Bus. &

17  Prof. Code § 17200; (10) declaratory relief; (11) quiet title.

18  　　　　Wells Fargo has moved to dismiss the entire complaint.  For the reasons explained below,

19  the motion is GRANTED as to the eighth and tenth causes of action, but DENIED as to all other

20  claims.

21  **II. LEGAL STANDARD AND DISCUSSION**

22  　　　　The Supreme Court has clarified that in order to defeat a motion to dismiss under Fed. R.

23  Civ. P. 12(b)(6), the complaint's "[f]actual allegations must be enough to raise a right to relief

24  above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  However,

25  the court is required to construe plaintiff's allegations in the light most favorable to the non-

moving party, accepting as true all material allegations in the complaint and any reasonable

inferences drawn therefrom.  See, e.g., Broam v. Bogan, 320 F.3d 1023, 1028 (9th Cir. 2003).

The court should grant the motion if the complaint does not contain either a "cognizable legal

theory" or facts sufficient to support a cognizable legal theory.  Balistreri v. Pacifica Police

Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

**A. Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing**

Plaintiffs' breach of contract theory is based on their contention that they made all

mortgage payments on time until "Defendants unilaterally deemed Plaintiffs delinquent and

added an immediately due $3,524.01 charge onto their loan balance."  Compl. ¶ 68.  They also

state that Defendants breached the contract by deeming Plaintiffs delinquent on the basis of the

fraudulent charge and accelerating payment on the loan.  ¶¶ 73-74.

First, Wells Fargo argues that this claim should be dismissed because Plaintiffs'

allegations are ambiguous and do not specify the provisions of the Deed of Trust that were

breached.  However, the complaint specifically states that "Plaintiffs . . . were only required to

'pay when due the principle [sic] of, and interest on, the debt evidenced by the Note.'" ¶ 67.[1]

The next paragraph states that $3,524 was erroneously charged to Plaintiffs.[2]  Later, Plaintiffs

allege that Wells Fargo's acceleration of the loan based on the erroneous charge breached the

contract by demanding more than was owed.  ¶ 74.  Wells Fargo does not address this reference

and provides no law that would persuade the court the allegations are insufficient.

Second, Wells Fargo moves for dismissal of this claim "because Plaintiffs defaulted on

their loan obligation," contending that the documents presented to the court establish that

---

[1]    The Deed of Trust, containing this language, is attached to the complaint at Exhibit A.

[2]    Exhibit E to the complaint is a letter to Plaintiffs from Wells Fargo dated May 3 (or 8—the number is unreadable), 2011 stating that Plaintiffs' past due amount was $4,902, and after unapplied funds were applied to the charge and late fees had been added, Plaintiffs owed $3,524.01.

Plaintiffs made no payments on the loan for five months.[3]  MTD at 4.  It cites the Notice of

Default, which was recorded on November 3, 2011, and states that payments are past due for the

month of July 2011 and all subsequent months.[4]  More importantly, Wells Fargo cites the

Forbearance Agreement signed by Plaintiffs.  This agreement was attached to the "Payment

arrangement agreement," and states that "[t]he indebtedness of the referenced loan is in default."

Plaintiffs each signed the document on April 16, 2011.  Wells Fargo maintains that this

forecloses success of the breach of contract claim because it clearly shows that Plaintiffs were in

default.  Plaintiffs' opposition does not address this issue directly, though it does repeat the claim

that Plaintiffs were never in default and that they executed the agreement because they believed

it was the "trial modification agreement" they had been promised over the phone.  Pl. Opp. at 4.

        Wells Fargo has cited several cases in support of its argument that the court should

dismiss the complaint because documents attached to it contradict allegations contained therein.

See Sumner Peck Ranch, Inc.  v. Bureau of Reclamation, 823 F.Supp. 715, 720 (E.D. Cal. 1993)

("In addition, the court may disregard allegations in the complaint if contradicted by facts

established by exhibits attached to the complaint.") (citing Durning v. First Boston Corp., 815

F.2d 1265, 1267 (9th Cir.1987)).

        However, Wells Fargo fails to recognize that a similar question was recently answered by

the Ninth Circuit.  In Balderas v. Countrywide Bank, N.A., 664 F.3d 787 (9th Cir. 2011), the

plaintiffs made several claims against defendant Countrywide based on a loan refinancing.  As a

---

[3]      In its reply, Wells Fargo contends that its motion should be granted on this point because
Plaintiffs' opposition failed to address the issue.  It is true that the opposition does not directly address the
issue of law, though it does reiterate its factual allegations that the Forbearance Agreement was only
signed as means to obtain the loan modification.
        The Local Rules and some precedent from this district allow dismissal for non-opposition to a
specific argument, see L.R. 7.1(f)(3)(b), (c); Wallace v. Busch Entertainment Corp., 2011 WL 3607232 at
*8 (S.D. Cal. 2011) (granting defendant's motion for summary judgment on breach of warranty claims
because plaintiff  did not address the arguments in his opposition).  Despite the availability of this
remedy, the court finds that it is not warranted here.
[4]      As noted above, Plaintiffs claim they made timely payments on the loan until October 2011,
when Wells Fargo stopped accepting payments.

result of allegedly intimidating actions by a mortgage broker, the plaintiffs signed the loan documents.  Under the federal Truth in Lending Act, borrowers have three days in which to rescind a loan agreement, and the lender must provide the borrowers with two copies of the Notice of Right to Cancel so they are aware of when and how they can rescind.  The plaintiffs claimed that they were not provided with this information, meaning that the lender violated TILA and as a result the plaintiffs should have had a right of rescission lasting for three years.  The district court granted Countrywide's motion to dismiss, pointing out that attached to the complaint was a document that the borrowers had signed acknowledging receipt of two copies of the Notice of Right to Cancel.

The Ninth Circuit reversed, holding that the exhibit "only proved that the [plaintiffs] signed the document in Countrywide's possession." Id. at 790.  While the acknowledgement signed by the plaintiffs created a rebuttable presumption of the delivery of the Notice of Right to Cancel, that presumption would only be useful to Countrywide in front of the factfinder, and should not have been relied upon by the court at the pleadings stage.  Id.

Balderas's reasoning applies with equal force to the case at bar:  Plaintiffs claim that they were led to sign the Forbearance Agreement because of Wells Fargo's misrepresentations, not because they actually were admitting default.  Just as in Balderas, Wells Fargo may be able to use Plaintiffs' signature as strong evidence in their favor at trial, but this court cannot dismiss the breach of contract claim based on that document.

More generally, inconsistencies in the Wells Fargo letters and agreements provide support for Plaintiffs' theory, making their allegations more than speculative.  The Payment arrangement agreement is dated April 8, 2011, and, from its wording, appears to be the first written communication "grant[ing]" Plaintiffs' modification requests.  However, it purports to

lower payments due beginning almost three months earlier, in January of 2011.[5]  It does not state

that those payments are past due.  Unless there was some confusion at Wells Fargo, it is unclear

why such a letter would be sent well after the dates to which it applied.  The May 2011 default

letter adds to this inconsistency.  It states that Plaintiffs owe $4,902.64 in past due payments.

This would represent two months of Plaintiffs' original payment amount of $2,451.  However,

there is no indication why the amount was not lowered to two months' worth of the adjusted

payment of $2,205.  Also, it is unclear which two months are covered by the May letter – if

Plaintiffs indeed had not paid the monthly payments beginning in January, the May letter should

have required four months' worth of payment (January through April).[6]

Thus, even without Balderas, the pleadings and documents attached make Plaintiffs'

allegations plausible.  Thus, the court denies Wells Fargo's motion on the breach of contract

claim.  For the same reasons, the motion is denied as to the breach of the covenant of good faith

and fair dealing claim.

**C.  Promissory Estoppel**

Plaintiffs' promissory estoppel claim is based on Wells Fargo's conduct in promising to

review and carefully consider the HAMP application but failing to do so.  Plaintiffs aver that

they were induced to forego "other viable options for mitigating their losses and retaining their

home," and that this caused them to incur an arrearage they would not have otherwise.  Compl.

¶¶ 97-98.

---

[5]     Reinforcing the theory that Wells Fargo did not purposely send a letter retroactively lowering payments, paragraph 3 of the letter states that "if you are unable to make a payment on the plan by the date indicated above, further collection activity may result, including foreclosure."

[6]     If the January and February payments had been made, the only late payment as of the April 8 mailing of the Forbearance Agreement would have been the March 25th payment.  Thus, Plaintiffs would have been in default for only about 14 days upon signing the letter.

It is possible that Plaintiffs did make two months' worth of payments sometime between the April 8 letter and the early May letter, but Defendants have not alleged this.

Wells Fargo maintains that Plaintiffs have failed to plead the necessary elements of promissory estoppel.  Under California law, promissory estoppel applies if (1) there is a clear and unambiguous promise, (2) the promisee reasonably and foreseeably relied on the promise, and (3) injury occurred as a result.  U.S. Ecology, Inc. v. State, 129 Cal.App.4th 887, 901 (2005).

Once again, Plaintiffs have met the relatively low bar set by the federal pleading standard.  They have alleged a clear and unambiguous promise from Ms. Armour that they would receive a modification plan that would save them hundreds of dollars per month; they allege that they relied on that promise by foregoing other options; they allege damage because they were not granted the modification and were forced to make full payments on the loan rather than modified payments.  They were also injured by relying on Mrs. Armour's promise and signing the Payment arrangement agreement and Forbearance Agreement, which may have led to the allegedly invalid threat of foreclosure.

**D. Fraud and Misrepresentation**

Plaintiffs also allege fraud and intentional or negligent misrepresentation, claiming that Wells Fargo induced them into signing the Forbearance Agreement by making promises about its contents.

"The elements of common law fraud in California are: (1) a misrepresentation of a material fact (false representation, concealment, or nondisclosure); (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." Collins v. eMachines, Inc., 202 Cal.App.4th 249, 259 (2011).  Fed. R. Civ. P. 9(b) requires a plaintiff to plead fraud "with particularity."  Misrepresentation is simply one type of fraud. Michael J. v. Los Angeles County Dept. of Adoptions, 201 Cal.App.3d 859, 867 (1988).  Thus, the elements needed to prove misrepresentation are the same as for fraud, except that for negligent misrepresentation, "there is no requirement of intent to induce reliance." Cadlo v. Owens-Illinois, Inc., 125 Cal.App.4th 513, 519 (2004).

Wells Fargo asserts that Plaintiffs' fraud claim is too general and "factually devoid." MTD at 8. It states that Plaintiffs cannot allege that Wells Fargo misrepresented a material fact with the intent to induce reliance on that misrepresentation and that there is no causal relationship between the alleged fraud and purported damages. However, the motion does not contain any serious argument, simply making general statements about Plaintiffs' failures to include sufficient facts. It ignores the fact that Plaintiffs list several individual representatives from Wells Fargo by name, describe their conversations, and explain why they signed the Forbearance Agreement based on the misrepresentations. Tracking the fraud requirements, Plaintiffs have alleged that: (1) On January 6, 2011, Susann Armour called Plaintiffs to tell them that they would receive a trial modification plan in the mail; the letter was not received until April 2011, though Plaintiffs were told that the modification had begun in January. But Ms. Armour and other representatives concealed the fact that by signing the modification agreement that would be sent, Plaintiffs were agreeing that the loan was in default and signing away certain rights; (2) Ms. Armour intentionally (or negligently) mischaracterized the agreement she described; (3) through this mischaracterization, Wells Fargo induced Plaintiffs to rely on their description of the modification plan; (4) Plaintiffs did rely on this when they signed the Forbearance Agreement, believing that they were required to sign it in order to receive the HAMP modification they had been seeking; (5) Plaintiffs suffered damage because their signature on the Forbearance Agreement spurred the notice of default and acceleration of debt actions by Wells Fargo.[7]

The allegations in the complaint are sufficient to specifically identify "what is false or misleading about [the] statement, and why it is false," In re GlenFed, Inc. Securities Litigation, 42 F.3d 1541, 1548 (9th Cir.1994), by alleging that Ms. Armour concealed the true nature of the

---

[7]    Plaintiffs allege that Wells Fargo "intended to use the subject agreement as a basis for appending additional charges upon Plaintiffs' loan and extorting additional payments from Plaintiffs via the threats of acceleration, imminent default and foreclosure upon Plaintiffs' property." Compl. ¶ 110.

agreement that was to be sent.  Further, these allegations are clearly "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong."  <u>Bly-Magee v. California</u>, 236 F.3d 1014, 1019 (9th Cir. 2011).

Wells Fargo also claims that in fraud cases against corporate entities, the plaintiff is required "to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written."  <u>Wang & Wang LLP v. Banco Do Brasil, S.A.</u>, 2007 WL 915232 at *2 (E.D. Cal. 2007).  First, this case is not binding authority and cites only state law precedent on this issue. Wells Fargo has provided no more particulars concerning this proposition and not cited any purpose for the alleged requirement.  Regardless, Plaintiffs have provided the representative's name (Susann Armour), the identity of the individuals to whom she spoke, what she said, and when.  While they have not specifically alleged her "authority to speak," they have identified Armour as the Wells Fargo "negotiator" assigned to their file.  Without more detail from Wells Fargo concerning this requirement, it cannot be successful in securing dismissal of the claim.

**E. Negligence**

Plaintiffs claim that Wells Fargo was negligent because it failed to meet the standard of care in handling their application for a loan modification.  The parties agree that generally, financial institutions owe no duty of care to borrowers if they are handling a loan in their conventional role.  <u>Nymark v. Heart Fed Savings & Loan Ass'n</u>, 231 Cal.App.3d 1089, 1096 (1991).[8]

Duty can be found if a lender is acting outside of the scope of the typical lender-borrower relationship or if the balancing of <u>Nymark</u>'s six-factor test tips in favor of the borrower.  First, it

---

[8]    This court agreed with that general principle in <u>Watts v. Decision One Mortg. Co., LLC</u>, 2009 WL 648669 at *5 (S.D. Cal. 2009).

1   is difficult to accept Wells Fargo's argument that it was acting solely within the typical scope of

2   a lender.  Though Wells Fargo was not required to enter into modification, its employees ensured

3   Plaintiffs that they would receive at least a temporary modification.  After making this

4   representation, the complaint alleges that Wells Fargo failed to act reasonably in numerous ways,

5   including inducing Plaintiffs into signing a document falsely stating that they were in default.

6   Wells Fargo cannot undertake the responsibility of administering the modification program yet

7   escape negligence liability for administering it in a way that misleads borrowers and potentially

8   brings them into default.

9          If Nymark is applied, assessment of its six factors point toward allowing the claims to

10  proceed here.  The factors the court must consider are:

            [1] the extent to which the transaction was intended to affect the plaintiff, [2] the
11          foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered
            injury, [4] the closeness of the connection between the defendant's conduct and
12          the injury suffered, [5] the moral blame attached to the defendant's conduct, and
            [6] the policy of preventing future harm.
13

14  Nymark, 231 Cal.App.3d at 1098 (citations omitted).  District courts have reached different

15  conclusions in applying this test, but most convincing is Garcia v. Ocwen Loan Servicing, LLC,

16  2010 WL 1881098 (N.D. Cal. 2010).[9]  In Garcia, the plaintiff sought a loan modification and the

17  lender's trustee sale of the property was postponed several times to allow time for processing of

18  the request.  Id. at *1.  The lender routed the plaintiff's documents to the wrong department and

19  then informed him the documents were missing.  He attempted to contact them several times, but

20  was unable to clear up the mistake.  When the plaintiff was finally able to speak to an employee

21  of the lender, he was informed that his home had been sold one day prior.  Id. at *2.  In

22  addressing the first factor, the transaction "unquestionably intended to affect Plaintiff" because it

23  was to determine if he could keep his home.  Second, the harm was foreseeable because the loss

24  _____

25  [9]     See also Chancellor v. OneWest Bank, 2012 WL 1868750 at *13-14 (N.D. Cal. 2012) (citing
        Garcia and finding that the failure to receive a modification would affect plaintiff and was likely to result
        in foreclosure).

of an opportunity to keep his home was a predictable result of the failure. Third, the injury was

certain.   Fourth, there was a close connection between the conduct and the injury.  Fifth, it was

unclear at that point if moral blame attached to the defendant.  Sixth, the court found a public

policy in preventing harm to home loan borrowers.  Id. at *3.

Wells Fargo attempts to distinguish Garcia, but none of the factual differences lead this

court to reach a different conclusion.  Wells Fargo highlights the fact that in Garcia, the plaintiff

applied for a permanent modification rather than a temporary one, the plaintiff's home had

already been sold at the time of the lawsuit, and the defendant allegedly forwarded the plaintiff's

documents to the wrong department.  As to the temporary/permanent distinction, it is unclear

why that would make a difference in this case, especially since Plaintiffs were seeking a

permanent modification but had allegedly been thwarted by Wells Fargo's incompetence.

Second, the fact that the Garcia plaintiff's home had already been sold may mean that plaintiff

was in a worse position, but that concerns the level of damages.  Finally, Garcia's allegations

that his documents had been forwarded to the wrong department are clearly analogous to the

long line of similar errors and unexplained inconsistencies described by Plaintiffs here.

Indeed, as in Garcia, application of the six factors favors Plaintiffs in this case.  The

modification transaction clearly was "intended to affect the plaintiff," and its mishandling would

very foreseeably create harm, the fact that modification approval was never guaranteed

notwithstanding.  Here, the certainty of injury was fairly high given the facts as pleaded, and

Plaintiffs' allegations clearly indicate a close connection between the conduct and the injury

suffered.  As stated in Garcia, moral blame is difficult to determine at this point, and the public

policy question is debatable.  Because four of the Nymark factors fall in Plaintiffs' favor and

none clearly favor Wells Fargo, application of Nymark supports allowing the negligence claim to

proceed here.

**F. Rosenthal Fair Debt Collection Practices Act**

1    Plaintiffs state a claim for violation of Cal. Civ. Code § 1788 ("RFDCPA"), which

2  prohibits creditors and debt collectors from engaging in deceptive activity.   Section 1788.10(e)

3  of the law prevents "[t]he threat to any person that nonpayment of the consumer debt may result

4  in the arrest of the debtor or the seizure, garnishment, attachment or sale of any property or the

5  garnishment or attachment of wages of the debtor, unless such action is in fact contemplated by

6  the debt collector and permitted by the law."[10]   The claim is based on the same set of facts as the

7  previous allegations.

8    Wells Fargo contends that a mortgage loan servicer cannot be a "debt collector" under the

9  RFDCPA, citing  Sipe v. Countrywide Bank, 690 F.Supp.2d 1141, 1151 (E.D. Cal. 2011).   It

10  also relies on that case for the proposition that collecting on a mortgage loan is not classified as

11  "debt collection" within the meaning of the law.  Sipe stated that the "law is clear that

12  foreclosing on a deed of trust does not invoke the statutory protections of the RFDCPA."  See

13  also Gonzalez v. First Franklin Loan Services, 2010 WL 144862 at *7 (E.D. Cal. 2010).   Though

14  these cases and many others come to the same conclusion, Wells Fargo has not pointed the court

15  to a case where plaintiffs base their allegations on threats of foreclosure when no late payments

16  were made.

17    Other district court decisions support finding RFDCPA liability in a situation such as this.

18  In Frison v. Accredited Home Lenders, 2011 WL 1103468 at *7 (S.D. Cal. 2011), this court

19  denied a motion to dismiss on an RFDCPA claim when the borrower alleged that the lender

20  authorized the foreclosure but allegedly "did not intend to cause Plaintiff to give up possession."

21  Citing § 1788.10(e), the order emphasized that if the debt collector threatens to sell the property,

22  an RFDCPA claim can be made "unless such action is in fact contemplated by the debt collector

23

24  [10]    A "debt collector" is "any person who, in the ordinary course of business, regularly, on behalf of
himself or herself or others, engages in debt collection.  The term includes any person who composes and
25  sells, or offers to compose and sell, forms, letters, and other collection media used or intended to be used
for debt collection, but does not include an attorney or counselor at law."  Cal. Civ. Code § 1788.2(c).

and permitted by the law." Because the plaintiff had alleged that the lender did not have the

legal authority to foreclose and did not intend to do so, the RFDCPA claim was valid.

Responding to the defendant's arguments concerning whether foreclosure qualifies as "debt

collection," the court found that the threat of foreclosure "does not constitute an actual

foreclosure." <u>Frison</u> at *7 (also citing <u>Champlaie v. BAC Home Loans Servicing, LP</u>, 706

F.Supp.2d 1029, 1054 (E.D. Cal. 2009) (finding that plaintiff failed to state a claim under the

RFDCPA because "[a]lthough plaintiff's claim is formally based on the 'threat' to foreclose

rather than foreclosure itself ... the Act does not prohibit a creditor from ***honestly representing***

***that he can and will foreclose***" (emphasis added in <u>Frison</u>) (internal footnotes omitted))).

Here, as in <u>Frison</u>, the complaint alleges that the threatened foreclosure was not permitted

by the law because Plaintiffs never fell behind on their payments. Similarly, threats of

foreclosure experienced by Plaintiffs are not the same as an actual foreclosure. For those

reasons, the court denies Wells Fargo's motion as to the RFDCPA claim.

**G. Negligence Per Se**

Plaintiffs make a claim for negligence per se based on Wells Fargo's alleged violations of

the RFDCPA. Defendants note that negligence per se is not a distinct claim for relief, but is

merely a doctrine allowing for a finding of negligence based on a statutory violation. Plaintiffs

provide essentially no counterargument in their opposition, only stating that "Plaintiffs

successfully pled their negligence per se claim."

Plaintiffs may be able to recover in negligence based on the RFDCPA if a violation is

found to have occurred, but that does not make it proper for this court to entertain a separate

negligence per se cause of action in addition to Plaintiffs' negligence claim. As noted above,

Plaintiffs have not provided any reason for the court to allow the claim to proceed. Thus, Wells

Fargo's motion is granted as to the eighth cause of action.

**H. Cal. Bus. & Prof. Code § 17200**

Plaintiffs also state a claim under Cal. Bus. & Prof. Code § 17200, alleging unlawful, unfair or fraudulent business practices.  Wells Fargo once again seeks to dismiss this claim by conclusorily stating that Plaintiffs' claims are too conclusory, and also asserts that Plaintiffs' claim must fail because it is predicated on their other claims, all of which should fail.   Because this court has upheld the majority of Plaintiffs' claims, Wells Fargo's motion to dismiss this claim cannot succeed based on that argument.

**I. Declaratory Relief**

Plaintiffs also seek declaratory relief.  Wells Fargo argues that "declaratory relief is not considered to be a viable cause of action in California."  MTD at 16.  It also argues that there is no present controversy, because the complaint arises from the events that all took place in the past.  Most pertinently, Wells Fargo states that the past wrongs that have occurred "have all crystalized into ten other causes of action."  MTD at 16-17.

Plaintiffs recognize the purpose of declaratory judgment is to operate prospectively, and state that "[i]t is unsettled as to how Plaintiffs, and all future Plaintiffs, should deal with a lender's offer to consider loan modification when Plaintiffs are in financial distress."  Pl. Opp. at 13.  Of course, this is not the type of future harm against which declaratory relief is intended to protect.

While there is no bar to declaratory relief if legal remedies exist, a court's discretion should lead it to refuse to grant declaratory relief unless it would clarify the parties' interests or relieve the uncertainty giving rise to the proceeding.  U.S. v. Washington, 759 F.2d 1353, 1356-57 (9th Cir. 1985).  Plaintiffs have pled breach of contract, negligence, and many other causes of action.  If the court rules on those causes of action, it will certainly determine whether the parties' contract was broken and whether Wells Fargo acted unlawfully or unfairly in its representations and mishandling of the modification process.

1    Because Plaintiffs have provided no valid reason that declaratory relief would be

2    appropriate and it appears that decisions as to the remaining causes of action will be sufficient to

3    determine the parties' rights, Wells Fargo's motion is granted as to the declaratory relief claim.

4

5

6    **J. Quiet Title**

7    Plaintiffs' final claim is for quiet title, seeking a judicial determination of each party's

8    interest in the subject property.  Wells Fargo maintains that "[a] plaintiff seeking quiet title <u>must</u>

9    allege that he paid any debt owed on the property."  MTD at 17 (emphasis in original).  Plaintiffs

10   have not alleged that they have done so, but their opposition argues that the "tender rule" only

11   applies when a plaintiff seeks to set aside a foreclosure sale that has already occurred, but cites

12   no authority in support.

13   Though Wells Fargo is correct that Plaintiffs' opposition is deficient on this point, the

14   court finds that dismissal would be inappropriate at this juncture.  Wells Fargo has pointed to

15   cases applying the tender rule, but has not discussed conflicting case law holding that the tender

16   rule does not apply to cases in which the foreclosure sale has yet to occur.  <u>Chan Tang v. Bank of

17   America, N.A.</u>, 2012 WL 960373 at *4-5 (C.D. Cal. 2012).  As explained by the <u>Tang</u> court, a

18   principal justification for the tender rule is that "unwinding a completed foreclosure sale would

19   be useless."  <u>Id</u>. at *5 (internal quotation marks omitted).  That reasoning does not apply here.

20   **III. CONCLUSION**

21   For the most part, Wells Fargo's general assertions that Plaintiffs' complaint is too vague

22   are starkly contradicted by the pleadings.  Thus, the motion is DENIED to all claims except the

23   declaratory relief claim and the negligence per se claim.  As to those two claims, the motion is

24   GRANTED.   Plaintiffs have moved for leave to amend their complaint if claims are dismissed.

25

Though most of Plaintiffs' claims have been upheld and amendment is largely unnecessary, leave to amend is GRANTED.

**IT IS SO ORDERED.**

DATED: July 12, 2012

Jeffrey T. Miller
United States District Judge